**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MICHAEL C. GIARDINA,**

      **Petitioner,**

**v.**                          **Case No. 8:15-cv-2703-T-35CPT**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**
_____/

## O R D E R

This cause comes before the Court on Michael C. Giardina's timely-filed petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1), motion to hear and rule (Doc. 31) and motion for a writ of mandamus, which the Court construes as a motion to hear and rule (Doc. 32). Giardina challenges his state conviction for aggravated battery, for which he is imprisoned for 15 years. Upon consideration of the petition, the response (Doc. 9) and Giardina's reply (Doc. 26), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the Court **ORDERS** that the petition is **DENIED** and the motions to hear and rule are **DENIED as moot**:

### HISTORY

**I.**    **Factual Background[1]**

Laneal Padilla and her daughter Latanya Smart lived together in New Port Richey, Florida. Giardina, who was Smart's boyfriend, frequently stayed with Smart and Padilla. On July 28, 2006, Christopher Carpentier, who had previously dated Padilla, was visiting

---

[1] This factual summary is based on the trial transcript and appellate briefs.

from out of state. Carpentier and Giardina had a verbal dispute about several matters, including allegedly missing rent money. After their argument, Giardina left the residence. Carpentier, carrying a large bag, walked approximately seven miles to a bus station. At some point, Carpentier decided to walk back to the home.[2] On the way, he picked up a wooden stick from a "for sale" sign to use as a walking stick.

Carpentier arrived in the early morning hours of July 29, 2006. Smart and Giardina were outside the home. Padilla was coming out of the door, but she went back inside when she saw Carpentier approaching. According to Carpentier, while he was about 15 to 20 feet away from Giardina and Smart, he threw the wooden stick into the neighbor's yard and said, "Now we can bring this up out in the open and talk about it." He took his bag off, and as he bent over to lay it on the ground, he felt a pain in his side. Carpentier saw Giardina close a folding knife and putting the knife in his pocket as he ran away.

According to Giardina, Carpentier never threw the wooden stick on the ground. Carpentier "slung" his bag down, said, "We're going to handle this fucking problem right now," and held the stick above his shoulder while he was four to six feet away from Giardina. Giardina stabbed Carpentier with a knife because he was afraid that Carpentier was about to hit him with the stick. Padilla did not witness the stabbing and did not remember seeing a stick.[3]

## II.    Trial and Direct Appeal

Giardina was convicted after a jury trial of aggravated battery. (Doc. 11 Exs. 1, 3) The trial court sentenced him to 15 years in prison. (Doc. 11 Ex. 5) Giardina timely

---

[2] Carpentier testified that he called Padilla, who told him she did not want him to leave. (Doc. 11 Ex. 2 at 28) Padilla denied that this conversation occurred. (Doc. 11 Ex. 2 at 68)

[3]  Smart did not testify at trial.

appealed his conviction and sentence. (Doc. 11 Ex. 6) After filing an initial brief, Giardina's appellate counsel filed a notice of supplemental authority, in which she gave notice of her intent to rely on a new decision of the Fourth District Court of Appeal, *Novak v. State*, 974 So.2d 520 (4th DCA 2008). (Doc. 11 Ex. 9) The state appellate court *per curiam* affirmed the conviction and sentence and denied Giardina's motion for rehearing. (Doc. 11 Exs. 10, 11)

### III. State Habeas Proceedings

Giardina filed two habeas petitions under Florida Rule of Appellate Procedure 9.141, alleging ineffective assistance of appellate counsel. (Doc. 11 Exs. 12, 15) The state appellate court denied the petitions without discussion. (Doc. 11 Exs. 13, 16)

Giardina later filed a petition for writ of habeas corpus, challenging the jury instructions in the Florida Supreme Court, which transferred his petition to the state circuit court. (Doc. 11 Exs. 27, 28) The state circuit court dismissed the petition on procedural grounds. (Doc. 11 Ex. 29) The state appellate court affirmed in a written opinion and addressed the merits of Giardina's claim. *Giardina v. State*, 160 So.3d 476 (Fla. 2d DCA 2015). The Florida Supreme Court declined to accept jurisdiction to hear Giardina's appeal. (Doc. 11, Ex. 38)[4]

### IV. State Postconviction Proceedings

Giardina filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 11 Ex. 18) The state court entered an order denying some of his

---

[4] This federal habeas proceeding was stayed at Giardina's request while he filed another habeas petition in the state appellate court claiming a manifest injustice, which, if granted, would have rendered this proceeding moot. (Docs. 21, 23) After Giardina's petition was denied, his motion to reopen this proceeding was granted. (Docs. 24, 25)

claims and directing the State to respond to the remaining claims. (Doc. 11 Ex. 19) After the State responded, the state court entered a final order denying Giardina's motion. (Doc. 11 Exs. 20, 21) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 11 Ex. 24)

## STANDARDS OF REVIEW

### I.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief and denied Giardina's state habeas petitions alleging ineffective assistance of appellate counsel without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel]

were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Giardina must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Giardina must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

"An ineffective assistance of appellate counsel claim is 'governed by the same standards applied to trial counsel under *Strickland*.'" *Corales-Carranza v. Sec'y, Fla. Dep't*

*of Corr.*, 768 F. App'x 953, 957 (11th Cir. 2019) (quoting *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013)). To establish prejudice when alleging ineffective assistance of appellate counsel, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

## DISCUSSION

### I.    Self-Defense

#### A.    Background

Giardina admitted that he stabbed Carpentier but claimed self-defense. In 2005, the Florida Legislature passed the "Stand Your Ground" law. *Little v. State*, 111 So.3d 214, 219-21 (Fla. 2d DCA 2013) (footnotes omitted) addressed the statute's passage:

> Prior to the enactment of the Stand Your Ground law, the justifiable use of deadly force by and against a civilian was governed by section 776.012. Section 776.012, Florida Statutes (2004), permitted the use of deadly force if a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." Section 776.031 governed the use of force in defense of others, and it permitted the use of deadly force if a person "reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony." In addition, the Florida Supreme Court recognized a common law duty to retreat that required a person to "retreat to the wall" or use "every reasonable means within his or her power to avoid the danger." *Weiand v. State*, 732 So.2d 1044, 1049, 1050 (Fla. 1999). There was an exception to the duty to retreat for a person claiming self-defense in his or her own residence; that exception was part of the "castle doctrine." *Id.*
>
> In 2005, the legislature enacted the Stand Your Ground law which amended sections 776.012 and .031 and created sections 776.013 and .032. Ch. 2005-27, §§ 1-4, at 200-02, Laws of Fla. Section 776.012 still permits the justifiable use of deadly force if a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." § 776.012(1). But the Stand Your Ground law added language permitting the justifiable use of deadly force "[u]nder those circumstances

permitted pursuant to s. 776.013." § 776.012(2). It also eliminated the common law duty to retreat for persons justifiably using deadly force under either section 776.012(1) or 776.013.
. . .

As for section 776.013, it is entitled "Home protection; use of deadly force; presumption of fear of death or great bodily harm." Subsections (1), (2), (4), and (5) of section 776.013 expand the "castle" to include a dwelling, residence, or occupied vehicle. . . .

Subsection (3) . . . applies to "[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be." § 776.013(3). It eliminates the duty to retreat for this law-abiding person. It also provides for the use of deadly force by this law-abiding person based upon the reasonable belief "it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony." *Id.*
. . .

Section 776.013(3) applies when a person is (1) not engaged in unlawful activity and (2) attacked in any place outside the "castle" as long as (3) he or she has a right to be there. A person who does not meet these requirements would look to section 776.012(1) to determine whether the use of deadly force was justified.

Giardina raises several claims concerning the "unlawful activity" language contained in § 776.013(3), and the corresponding jury instructions on the justifiable use of deadly force and the justifiable use of non-deadly force. The instructions provided to Giardina's jury stated that Giardina had no duty to retreat and had the right to stand his ground and meet force with force if he (1) was not "engaged in an unlawful activity"; (2) was attacked in a place where he had a right to be, and (3) reasonably believed the use of force was necessary to prevent death or great bodily harm to himself. (Doc. 11 Ex. 2 at 226-27, 228).

These instructions were consistent with the standard instructions in effect at the time of Giardina's January 2007 trial. *See* Fla. Std. Jury Inst. (Crim.) 3.6(f), (g) (2006). In February 2008, the Fourth District Court of Appeal issued *Novak* and found that "a jury

charged with the 'unlawful activity' instruction might confuse the charged crimes with 'unlawful activity' that precludes the justification of self-defense unless the defendant has retreated." 974 So.2d at 522.

Following *Novak*, the Florida Supreme Court amended standard instructions 3.6(f) and 3.6(g) "to include citations to *Novak* . . . , clarifying that the 'no duty to retreat' rule applies to situations where the defendant was not engaged in unlawful conduct beyond that for which he asserts justification." *In re Standard Jury Instructions in Criminal Cases-Report No. 2009-01*, 27 So.3d 640, 641 (Fla. 2010).[5] Giardina raises four claims concerning § 776.013(3) and the related jury instructions.

### B.    Denial of a Fair Trial (Ground Twelve)

In Ground Twelve, Giardina alleges that he was deprived of a fair trial "by virtue of a confusing and circular self-defense jury instruction." (Doc. 1 at 21) As an initial matter, the Court finds that Giardina does not expressly raise a federal constitutional claim in his petition. To the extent his claim involves the application of Florida law, it is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (where the claim is merely that a jury instruction is incorrect under state law, federal habeas relief is not available); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."); *Branan v. Booth*, 861 F.2d 1507,

---

[5] Specifically, the instructions were amended to include a note to trial judges citing *Novak* and stating that "[t]here is no duty to retreat where the defendant was not engaged in any unlawful activity other than the crime(s) for which the defendant asserts the justification." *In re Standard Jury Instructions in Criminal Cases-Report No. 2009-01*, 27 So.3d at 643-44, 646. The instructions were accordingly amended to reflect that trial judges had discretion whether to include the "unlawful activity" language in instructing the jury on a defendant's duty to retreat. *Id.*

1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

To the extent Giardina's claim can be liberally interpreted as alleging a federal constitutional violation, and assuming that Giardina exhausted a federal claim,[6] he is not entitled to relief. Giardina challenged the "unlawful activity" jury instruction in the state habeas petition filed in the Florida Supreme Court. (Doc. 11 Ex. 27) The petition was transferred to the state circuit court, which concluded that Giardina had addressed the instruction in earlier proceedings and dismissed his petition because "[a] petition for writ of habeas corpus is not the proper vehicle for challenging the outcome of the prior proceedings." (Doc. 11 Ex. 29 at 2) The state appellate court disagreed that the issue had been resolved in earlier proceedings, and instead concluded that the claim lacked merit in *Giardina*, 160 So.3d at 476:[7]

> Michael C. Giardina appeals the denial of his petition for habeas corpus. This court ordered briefing from the State and has fully reviewed the record. At trial, the jury received a modified instruction on justifiable use of deadly force. On direct appeal, Mr. Giardina unsuccessfully argued that the trial court committed fundamental error by omitting a portion of the instruction explaining that deadly force can be permissible when defending against the imminent commission of a forcible felony by an aggressor. *See Giardina v. State*, 986 So. 2d 608 (Fla. 2d DCA 2008) (table decision). In this petition for habeas corpus, which was filed in 2013, he argues that the trial court committed fundamental error resulting in a manifest injustice when it instructed the jury with standard language that he had no duty to retreat if

[6] Respondent does not identify the claim as non-federal and concedes that the claim is exhausted. (Doc. 9 at 22) *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

[7] Respondent claims a procedural default on the basis that the state appellate court affirmed the state circuit court's rejection of Giardina's petition on procedural grounds. *See Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (explaining that a claim may be procedurally defaulted on federal habeas review if "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred[.]"). Giardina correctly replies that Respondent fails to show a default on this basis. The state appellate court reviewed the merits of Giardina's claim instead of applying a state procedural bar.

he was not engaged "in an unlawful activity." Although we agree with Mr. Giardina that this issue was not resolved in prior proceedings, we do not agree that this instruction on the duty to retreat was erroneous, much less that it resulted in the type of manifest injustice that caused the Fourth District to give relief in *Furney v. State*, 115 So. 3d 1095 (Fla. 4th DCA 2013), which addressed the "forcible felony" jury instruction discussed in *Martinez v. State*, 981 So. 2d 449 (Fla. 2008).[8]

Federal habeas corpus review is very limited when reviewing the propriety of jury instructions from a state court trial. Accordingly, "[f]ederal habeas courts . . . do not grant relief, as might a state appellate court, simply because the instruction may have been deficient" under state law. *McGuire*, 502 U.S. at 72. Instead, relief may be granted on federal habeas review only when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997) (stating that a federal habeas court's role in reviewing a state court jury instruction is "to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process. . . . A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair."); *Jones v. Dugger*, 888 F.2d 1340, 1343 (11th Cir. 1989) ("[I]mproper jury instructions can never be the basis for federal habeas corpus relief unless the instruction rendered the whole trial so unfair as to amount to a denial of due process."); *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986) ("State court jury

---

[8] *Furney* addressed the jury instruction on the forcible felony exception to self-defense. *See* § 776.041(1), Fla. Stat. (providing that self-defense is not available to a person who "[i]s attempting to commit, committing, or escaping after the commission of a forcible felony[.]"). In Furney's case, the jury was instructed that self-defense was not available if they found that "Furney was attempting to commit, committing, or escaping after the commission of a felony battery or aggravated assault," which were "*the same offenses* that he admitted to committing in self-defense." 115 So.3d at 1096 (emphasis added). In other words, the instruction essentially told the jury that self-defense was not available for the specific offenses that Furney contended he committed in self-defense. The instruction therefore deprived Furney of his sole defense and amounted to fundamental error. *See id.* at 1097-98.

instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness.").

Giving deference to the state court's construction of its own jury instructions and considering the instruction in light of the trial as a whole, the "unlawful activity" language did not violate Giardina's right to due process by rendering his trial fundamentally unfair. The identified portion of the instructions, which were part of Florida's Standard Criminal Jury Instructions at the time of Giardina's trial, properly informed the jury under Florida law that Giardina had no duty to retreat if he was not engaged in an unlawful activity when he was attacked. The Fourth District Court of Appeal's later determination that a jury might confuse such "unlawful activity" with a charged offense does not establish that the instruction given in Giardina's case rendered the entire trial fundamentally unfair. Giardina has not cited, and this Court has not located, any authority providing that the "unlawful activity" instruction is so confusing as to cause fundamental unfairness.[9] Nor does Giardina establish that the later clarification to the instruction establishes that his trial was fundamentally unfair. In this regard, Giardina has not shown that the jury's verdict was based on a misunderstanding of what constituted "unlawful activity." Further, as addressed, to prove that he acted in self-defense, Giardina had to establish that he reasonably believed the use of force was necessary to prevent death or great bodily harm to himself. (Doc. 11 Ex 2 at 226-27, 228) Thus, the jury's rejection of Giardina's self-defense claim could have been based on their view that Carpentier did not have a stick. Thus, Giardina's use of force could have been found to be unjustified because he would

---

[9] The court in *Novak* did not find that the "unlawful activity" instruction was fundamentally erroneous. 974 So.2d at 522.

have had no reasonable belief that such force was necessary to protect himself from death or great bodily harm.

Giardina fails to show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Ground Twelve is denied.

### C. Ineffective Assistance of Appellate Counsel (Ground Four)

Giardina asserts relatedly in Ground Four that appellate counsel was ineffective in not challenging § 776.013(3), Fla. Stat. as unconstitutionally vague on its face because it does not define the term "unlawful activity". Giardina claimed in his state habeas petition that "[t]he broad phrase can be construed as the 'unlawful activity' in which a criminal defendant could necessarily be on trial for, [sic] thus precluding a justification of self-defense, unless a defendant had retreated, which was not the legislative intent." (Doc. 11 Ex. 12 at 27) Thus, Giardina asserted, appellate counsel should have argued that the statute failed to meet the requirements of the due process clause of the Fourteenth Amendment and the due process clause of Art. I, § 9 of the Florida Constitution.

Initially, to the extent Giardina's claim rests on an application of Florida constitutional law, this Court must defer to the state court's ruling. While Giardina's ineffective assistance claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . [a federal court] must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *see Agan*, 119 F.3d at 1549 (noting that it is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-

guess them on such matters."). Accordingly, Giardina does not show that the state appellate court unreasonably rejected his ineffective assistance claim to the extent it concerned a challenge under the due process clause of the Florida Constitution.

Giardina fails to show that the state appellate court unreasonably rejected his claim that appellate counsel was ineffective in failing to challenge the statute's validity under the federal Constitution. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Courts "insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Id.* Further, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* (footnote omitted); *see also United States v. Williams*, 553 U.S. 285, 304 (2008) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (stating that the void-for-vagueness doctrine requires that a statute define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."); *Jordan v. De George*, 341 U.S. 223, 230, 231-32 (1951) ("The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. . . . The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.").

Even assuming that Giardina's challenge to the statute raises fundamental due process interests and thus could have been brought for the first time on appeal,[10] Giardina does not establish that appellate counsel was ineffective in not raising this claim. Giardina fails to show that the statute is unconstitutionally vague because it does not define "unlawful activity;" rather, the language of the statute gives fair notice that it is only meant apply to individuals who are following the law at the time they are attacked. And even if the "unlawful activity" language could be considered unclear in the context of the corresponding jury instruction given during a trial, Giardina does not establish that § 776.013(3) is unconstitutionally vague as it relates to the actions of a law-abiding person who acts in self-defense when attacked.

Accordingly, appellate counsel reasonably could have concluded that challenging § 776.013(3) as unconstitutionally void for vagueness would have afforded Giardina no relief. Giardina therefore fails to show that appellate counsel was ineffective. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (stating that appellate counsel is not ineffective for failing to raise issues "reasonably considered to be without merit.") (citation omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (stating that appellate counsel may choose to focus on the strongest claims while excluding claims that might have a lower chance of success or detract from stronger arguments).

Giardina has not shown that the state appellate court's rejection of his ineffective assistance of appellate counsel claim was an unreasonable application of, or contrary to,

---

[10] *See State v. Johnson*, 616 So.2d 1, 3-4 (Fla. 1993) (explaining that a facial challenge to a statute's validity may be raised for the first time on appeal only if the error is fundamental and finding that the validity of a statute allowing enhanced sentences for habitual violent felony offenders could be raised for the first time on appeal because it was basic to the judicial decision under review and involved fundamental liberty due process interests).

clearly established federal law, or based on an unreasonable factual determination. Accordingly, Giardina is not entitled to relief on Ground Four.

### D.     Ineffective Assistance of Appellate Counsel (Ground One)

In Ground One, Giardina contends that appellate counsel was ineffective in failing to file a supplemental brief addressing *Novak*, which issued during the pendency of his direct appeal. Appellate counsel filed a notice of supplemental authority informing the appellate court that she intended to rely on *Novak*. (Doc. 11, Ex. 9) Florida Rule of Appellate Procedure 9.225 provides (emphasis added):

> A party may file the notice of supplemental authority with the court before a decision has been rendered to call attention to decisions, rules, statutes, or other authorities that are significant *to the issues raised* and that have been discovered after the last brief served in the cause. The notice *shall not contain argument*, but may identify briefly *the issues argued on appeal* to which the supplemental authorities are pertinent[.]

Giardina claims that counsel erred in filing a notice of supplemental authority, instead of moving to file a supplemental brief in which she could have presented argument about *Novak*. He appears to claim a notice of supplemental authority was not proper because counsel's initial brief did not raise the issue of the "unlawful activity" jury instruction. In support, Giardina cites *Cleveland v. State*, 887 So.2d 362, 364 (Fla. 5th DCA 2004), which notes that Rule 9.225 was not intended to allow parties to submit an additional brief raising new issues under the guise of supplemental authority.

Even if Giardina is correct that Rule 9.225 was inapplicable because counsel's initial brief did not address the "unlawful activity" jury instruction, he fails to show entitlement to relief. As Giardina recognizes, appellate counsel could not have unilaterally filed a supplemental brief raising a new claim; she would have needed permission from the appellate court to raise a new issue. *See, e.g., York v. State*, 891 So.2d 569, 571

(Fla. 2d DCA 2004) (finding that appellate counsel should have "filed a motion to file a supplemental brief" to address the impact of cases not available when counsel filed the initial brief).

Whether appellate counsel properly presented claims to the state appellate court concerns the application of state procedure and state law. The question is whether the state appellate court would have granted Giardina relief if his appellate counsel had moved to file a supplemental brief addressing *Novak* instead of filing the notice of supplemental authority. In denying Giardina's ineffective assistance of appellate counsel claim, the state appellate court has implicitly answered that question in the negative. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done."). Thus, Giardina has not established that appellate counsel was ineffective in filing a notice of supplemental authority.

Giardina has not demonstrated that the state court's denial of his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of fact. Consequently, he is not entitled to relief on Ground One.

### E. Ineffective Assistance of Trial Counsel (Ground Five)

Giardina claims that trial counsel was ineffective for failing to object to the self-defense jury instruction because the "unlawful activity" language was circular and confusing. The state court denied Giardina's claim, finding that counsel was not ineffective because the instruction provided to his jury was consistent with the standard

instruction in effect at the time of trial. (Doc. 11 Ex. 21 at 2-3) Giardina abandons Ground Five in his reply.[11] Accordingly, he is not entitled to federal habeas relief on Ground Five.

## II. Evidence of Giardina's Prior Convictions

### A. Ineffective Assistance of Trial Counsel (Ground Two)

In Ground Two, Giardina claims that trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor impeached him with his prior convictions. Under Florida law, "[t]he general rule for impeachment by prior convictions . . . is that it is restricted to determining if the witness has previously been convicted of a crime, and if so, how many times." *Ross v. State*, 913 So.2d 1184, 1186 (Fla. 4th DCA 2005) (citing § 90.610, Fla. Stat). Therefore, the prosecutor usually "is not allowed to delve into the nature of a defendant's prior convictions or the circumstances surrounding them." *Id.* But when "a defendant attempts to mislead or delude the jury about his prior convictions, the State is entitled to further question the defendant concerning the convictions in order to negate any false impression given." *Fotopoulos v. State*, 608 So.2d 784, 791 (Fla. 1992).

Defense counsel did not address Giardina's prior convictions during direct examination. The prosecutor brought up his prior convictions on cross-examination (Doc. 11 Ex. 2 at 167-68):

Q. Mr. Giardina, how many felonies have you been convicted of?

A. Two, sir.

Q. Now, when you took the stand today, you gave an oath, correct?

A. That's correct, sir.

Q. And that was an oath to tell the truth, right?

---

[11] Giardina states, "I have no choice but to ask this Court to preserve its scarce judicial resources regarding habeas ground five. . . . I am constrained by caselaw depicting I cannot obtain habeas relief on such basis." (Doc. 26 at 32 n.16)

A. That's correct, sir.

Q. And you want to tell the truth, that's what you're doing today, isn't it?

A. Yes.

Q. Because if you don't tell the truth, that's going to be perjury, right?

A. That's correct, sir.

Q. And that's a felony, correct?

A. I assume so, sir.

Q. A serious charge?

A. Yes, sir.

Q. Why don't you look this jury in the eye, Mr. Giardina, and tell them again how many felonies you've been convicted of?

A. Two, sir.

The prosecutor did not inquire further about Giardina's prior convictions. On re-direct, counsel asked Giardina about the nature of his prior convictions (Doc. 11 Ex. 2 at 169):

Q. You've been convicted previously of felonies; is that correct?

A. That's correct, sir.

Q. What were the felonies and when were you convicted?

A. I was convicted in 1999 for grand theft auto. And the year 2000, I was convicted of the [sic] larceny.

In Ground Nine, Giardina claims that trial counsel was ineffective for failing to object or move for a mistrial when the prosecutor "egregiously" impeached him with his prior convictions "in such a way as to believe that [he] was lying." (Doc. 1 at 18) Giardina also claims that, after counsel failed to object, counsel then "had to reveal the exact nature

of [his] prior felony convictions" on re-direct to overcome the implication that he was lying.

(Doc. 1 at 18) The state court denied Giardina's claims (Doc. 11 Ex. 21 at 3-5):

> In ground (e), Defendant asserts that counsel was ineffective for failing to object to improper impeachment. In support of this argument, Defendant asserts that during the Defendant's cross-examination, the State's questioning insinuated that he was lying about his prior convictions. However, as the State asserts, the Defendant has failed to establish deficient performance or prejudice with regard to this claim.
>
> . . .
>
> As argued by the State, the jury was well aware that the Defendant's testimony about the number of his prior convictions were said knowing that if he testified falsely he could be charged with perjury. The jury was never presented with any evidence suggesting Defendant was lying. Moreover, if the jury believed the Defendant had lied, they would expect the State to have access to Defendant's criminal history and would expect the State to present evidence that the Defendant was lying. However, there was never any discussion in the presence of the jury that the Defendant had anything except two prior felony convictions, as he testified. As further pointed out by the State, if anything, this testimony bolstered Defendant's testimony about having only two convictions; especially in light of the fact where there was no evidence to the contrary.
>
> Furthermore, Defendant's claim that counsel's follow up questions about the nature of the offenses was intended to rehabilitate Defendant after the State's questions is equally without merit. Here, the Defendant had just testified that he had two prior convictions. As argued by the State, even assuming the State successfully insinuated that Defendant had more than two convictions, Defendant neglects to offer how presenting the nature of two convictions would be rehabilitation. As the State notes "[t]he *nature* of two convictions is absolutely irrelevant to a discussion about the total *number* of convictions in Defendant's record." Despite Defendant's allegations that counsel's questions were motivated by the State's questions, it is clear that counsel asked these questions to demonstrate that Defendant had no violent history. Specifically, the Defendant was on trial for Aggravated Battery, and the jury had just heard the Defendant testify that he had two prior felonies. It only made sense for counsel to show that these two prior felonies were property offenses that did not involve violence. If counsel had not followed up, the jury would no doubt be left wondering what those two prior felonies were. As pointed out by the State, counsel surely would have done this whether or not the State asked the additional questions complained of. Accordingly, this ground is denied.

Giardina has not shown that the state court unreasonably denied his claim. Giardina does not demonstrate a meritorious basis upon which counsel could have objected. The prosecutor's questions focused on the number of his prior convictions, which is permissible under Florida law. *Ross*, 913 So.2d at 1186. Further, the state court reasonably concluded that counsel was not ineffective in failing to object on the basis that the prosecutor's questions suggested Giardina was lying. Giardina repeated his initial response after being reminded of the seriousness of perjury, and the State presented no further information showing that his testimony was inaccurate.[12] This decision did not involve an unreasonable application of *Strickland*. Nor was it based on an unreasonable factual determination.

The Court notes that Giardina claimed in both his Rule 3.850 motion and his federal habeas petition that counsel was ineffective in not moving for a mistrial on the basis of the prosecutor's questioning. The state court's order only expressly addressed the lack of objection; it does not address counsel's failure to move for a mistrial. Assuming that the trial court failed to rule on this aspect of Giardina's claim and that *de novo* review is therefore warranted,[13] Giardina cannot obtain relief. In Florida, "[a] motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial." *England v. State*, 940 So.2d 389, 401-02 (Fla. 2006); *see also Snipes v. State*, 733 So.2d 1000, 1005 (Fla. 1999) ("A decision on a motion for mistrial is within the discretion of the trial

---

[12] Discussions at a later bench conference revealed the prosecutor's erroneous belief that Giardina had three prior convictions. (Doc. 11 Ex. 2 at 176-77) It appears that the prosecutor may have mistaken a document finding Giardina in violation of probation for a separate conviction of guilt. (Doc. 11 Ex. 2 at 178-79)

[13] *See Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (stating that *de novo* review is appropriate when the state courts fail to resolve the merits of a federal habeas petitioner's claim that was presented to the state courts).

judge and such a motion should be granted only in the case of absolute necessity."); *Fletcher v. State*, 168 So.3d 186, 207 (Fla. 2015) ("[T]he standard for a motion for mistrial is high[.]").

Where the state court found no error at all in the prosecutor's questioning on cross-examination, Giardina cannot show that this same questioning involved an error so prejudicial as to vitiate the entire trial. As Giardina therefore fails to show that the trial court would have granted a mistrial, Giardina has not demonstrated that counsel was ineffective for not moving for a mistrial. *See Richter*, 562 U.S. at 105 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.").

Next, Giardina fails to show that the state court unreasonably denied his claim that counsel was ineffective in eliciting the nature of his prior convictions. The manner in which counsel chooses to question a witness is a strategic decision. *See United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970)[14] ("[D]ecisions as to whether or not call certain witnesses to the stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations."). Counsel's strategic decision only constitutes ineffective assistance if it was patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (internal quotation marks and citation omitted).

---

[14] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting all decisions of the former Fifth Circuit announced prior to October 1,1981, as binding precedent in the Eleventh Circuit).

Giardina has not established that counsel's strategic decision to ask him about his prior convictions was patently unreasonable. The state court did not unreasonably reject Giardina's claim that counsel only did so because he was forced to try to rehabilitate Giardina. Rather, as the state court's order indicates, showing that Giardina's prior convictions were for property offenses would have supported the argument that Giardina stabbed the victim because he was acting in self-defense, not because he was acting consistent with a history or pattern of violence. Accordingly, Giardina does not show that the state court's rejection of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.

In his reply, Giardina raises an additional challenge to counsel's performance. As set forth in the factual recitation, Giardina and Carpentier had argued over missing rent money. Carpentier testified at trial that he "kn[e]w" Giardina had something to do with taking the money, and Giardina testified that Carpentier "told everybody" that Giardina had taken the money. (Doc. 11 Ex. 2 at 35, 165) Giardina alleges in his reply that he was prejudiced by counsel's decision to reveal the nature of his prior convictions because once the jury learned that he had prior convictions for theft and larceny, the jury was more likely to believe Carpentier's insinuation that Giardina had stolen rent money and thus doubt Giardina's credibility.

This aspect of Giardina's claim was not raised in the federal habeas petition and, thus, is not preserved. Even if the Court were to liberally interpret Giardina's reply as merely elaborating upon the ineffective assistance claim that was presented in Ground Nine, it fails. Giardina raised this allegation when he presented his ineffective assistance claim to the state court, but the state court's order did not mention it. Even under *de novo*

review, however, Giardina fails to show that counsel was ineffective in eliciting information about his prior convictions. As addressed, counsel made a reasonable strategic decision to elicit the nature of Giardina's priors to show that Giardina did not have a history of violent crime. Counsel reasonably could have concluded that the benefits of pursuing this strategy outweighed any risk. *See, e.g., Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (stating that when assessing an ineffective assistance claim a court "should always presume strongly that counsel's performance was reasonable and adequate" and should be "highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy.") (citations omitted). Any potential negative impact from this disclosure is speculative and does not override the reasonableness of counsel's strategic decision. Giardina cannot show ineffective assistance. Giardina is not entitled to relief on Ground Nine.

**B.    Ineffective Assistance of Appellate Counsel (Ground Two)**

In Ground Two, Giardina claims relatedly that appellate counsel was ineffective in failing to argue that the State improperly impeached him with his prior convictions. To raise an issue on appeal in Florida, a litigant must object at trial when the alleged error occurs, unless the error is fundamental. *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003). Recognizing that trial counsel did not contemporaneously object, Giardina claims that appellate counsel should have raised this issue as fundamental error. Giardina has not shown the prosecutor's questioning was fundamentally erroneous. To be fundamental, an error must amount to a denial of due process and must "reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without

the assistance of the alleged error." *Id.* (quoting *Brown v. State*, 124 So.2d 481, 484 (Fla. 1960)).

As addressed, the prosecutor's inquiry appropriately addressed the number of Giardina's prior convictions, not their nature, and did not improperly convey that Giardina was lying. Giardina fails to establish an error that "reach[ed] down into the validity of the trial" and without which he would not have been convicted. *Id.* Thus, Giardina cannot show that a fundamental error claim would have succeeded on appeal. Appellate counsel is not ineffective in choosing not to raise a claim that is without merit. *Nyhuis*, 211 F.3d at 1344. Giardina fails to show that the state court's denial of his ineffective assistance of appellate counsel claim was contrary to or involved an unreasonable application of clearly established law or was based on an unreasonable factual determination. Giardina is not entitled to relief on Ground Two.

### III. The Defense's Impeachment of the Victim: Ineffective Assistance of Trial Counsel (Ground Eight)

Giardina argues that trial counsel was ineffective in failing to impeach the victim, Christopher Carpentier, with Carpentier's prior conviction. The state court denied this claim (Doc. 11 Ex. 19 at 3-4):

> In ground (d), defendant claims that counsel was ineffective for failing to impeach the victim with his prior criminal convictions. According to defendant, counsel told him that he could not impeach the victim with his prior criminal record because the victim's convictions did not occur in Florida. While it is true that any conviction in which the possible punishment exceeds one year, as well as crimes of dishonesty, may be used for impeachment purposes even if out of state; the defendant fails to assert what the victim's crimes, if any, actually were. Thus, without alleging that the victim's crimes would have been admissible as impeachment evidence, it cannot be said that counsel was deficient or that the absence of the evidence was prejudicial. Accordingly, this claim must be denied.

The record supports the state court's ruling. In the memorandum supporting his postconviction motion, Giardina copied by hand a part of what he represented was the deposition of State witness Laneal Padilla. Padilla indicated that Carpentier "got out of jail" and Carpentier "was on probation, and they dropped the case, whatever it was, I don't really know, but they let him out." (Doc. 16 Ex. 43 at 27) But, as the state court found, Giardina did not specifically identify or provide evidence of Carpentier's prior conviction. Thus, Giardina did not show that the conviction could be utilized for impeachment on the basis that it either involved a crime of dishonesty or false statement or that it carried a possible punishment of more than one year. *See* § 90.610(1), Fla. Stat. Because Giardina has not demonstrated that counsel could have impeached Carpentier with this prior conviction, he fails to establish ineffective assistance. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance claim); *see also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (stating that a federal court may not grant habeas relief "on the basis of little more than speculation with slight support.").

Giardina has not established that the state court's denial of this ground involved an unreasonable determination of *Strickland* or was based on an unreasonable factual determination. Consequently, he is not entitled to relief on Ground Eight.

## IV.    Introduction of Audio Recordings

### A.    Ineffective Assistance of Trial Counsel (Grounds Six and Seven)

The State introduced recordings of phone calls that Giardina placed from jail while awaiting trial. The trial transcript denotes significant portions of some calls as "inaudible."

(Doc. 11 Ex. 2 at 79-134) After the State published the calls, the court reporter stated, "I had a very hard time hearing" and "This is so [i]naudible." (Doc. 11 Ex. 2 at 135).

In Ground Seven, Giardina alleges that trial counsel was ineffective in not objecting and moving for a mistrial on the basis that the recordings were inaudible. In Ground Six, Giardina claims that trial counsel was ineffective in not objecting or moving to exclude the calls as unduly prejudicial. He claims that the calls amounted to improper character evidence because they revealed that he had been in jail and displayed his "thoughtless propensity to use profanity." (Doc. 1 at 14) The state court denied Giardina's claims (Doc. 11 Ex. 19 at 3) (court's record citation omitted):

> In grounds one(b) and (c), defendant claims that counsel was ineffective for failing to make a specific objection and move for a mistrial when the state introduced "inadmissible character evidence" during their case in chief. To support his claim, defendant alleges that the state sought to introduce evidence in the form of defendant's jail phone calls. He acknowledges that although counsel objected to relevancy he failed to argue a specific objection, pursuant to Florida Rule of Evidence 90.104(1)(a). Defendant claims that counsel's failure to argue a specific objection allowed the jury to hear recordings which were "painfully inaudible" and where audible, contained only portions of conversations which "did nothing but cast a negative light upon [defendant]." This claim must fail. As acknowledged by defendant, counsel did object to the evidence and that objection was overruled. Moreover, defendant has failed to establish any valid reason for the exclusion of the recordings.

Giardina has not shown that the state court unreasonably denied his claim. The underlying question of admissibility of evidence is a state law matter. In finding that Giardina failed to "establish any valid reason for the exclusion of the recordings", the state court concluded that an objection would have failed under state evidentiary rules. Given the deference that must be afforded to the state court's application of state law, this Court has no basis to conclude that counsel was ineffective. *Herring*, 397 F.3d at 1354-55; *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of

Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.")

Additionally, there is support for the denial of Giardina's claim. The trial transcript shows that while the court reporter found portions of the recordings to be inaudible, she transcribed other parts of the recordings. (Doc. 11 Ex. 2 at 79-134) *See Martinez v. State*, 761 So.2d 1074, 1083 (Fla. 2000) ("The general rule in Florida regarding admissibility of partially inaudible tape recordings is that partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible. Such recordings are admissible unless the inaudible and intelligible portions are so substantial as to deprive the audible portions of relevance.") (internal quotation marks and citations omitted).

Giardina does not challenge the recordings' authentication. Furthermore, he does not show that any inaudible portions deprived the audible portions of relevance or made them misleading. Parts of the calls as transcribed in the trial transcript were relevant to Giardina's credibility and consciousness of guilt because they suggested that Giardina wanted a potential witness to change her testimony and claim not to remember the events if she were deposed.[15] Accordingly, as Giardina does not show that inaudibility was a

---

[15] The transcript shows Giardina stated that someone, apparently Latanya Smart, "snitched" on him and that if she was deposed, "she going to have to tell them, look I was high and I don't remember nothing, that's all she got to say. . . . If she says that, I walk out free." (Doc. 11 Ex 2 at 97-98). Giardina later said, "all you got to do is coerce[.]" (Doc. 11 Ex. 2 at 99) Further portions of the calls indicated that Giardina tried to determine if Smart was subpoenaed and that Giardina wanted to tell her what do say during her deposition. (Doc. 11 Ex. 2 at 113, 114) Giardina stated that he was "buried" and that she had his life in her hands. (Doc. 11 Ex. 2 at 120)

viable basis to object to the audio recordings, he fails to demonstrate that the state court unreasonably applied *Strickland* in finding that counsel was not ineffective for failing to object to the calls' inaudibility.

Giardina alleges in Ground Seven of his federal habeas petition and the corresponding ground of his Rule 3.850 motion that trial counsel was ineffective in not moving for a mistrial due to the alleged inaudibility of the recordings. The state court did not expressly address this aspect of Giardina's claim. But even under a *de novo* review, Giardina cannot obtain relief on his ineffective assistance of trial counsel claim. Giardina does not show that the audio recording's admission resulted in an error so prejudicial as to vitiate the entire trial. *See England*, 940 So.2d at 401-02. Thus, he fails to show that a motion for mistrial would have been granted.

Further, Giardina does not show that the trial court unreasonably denied his claim that counsel was ineffective in failing to object to the calls or filing a motion in limine to exclude them on another basis. Initially, as addressed in the state court's order, counsel objected to the recordings as irrelevant. (Doc. 11 Ex. 2 at 63-64) To the extent Giardina claims that counsel should have argued that the calls were more prejudicial than probative or amounted to improper character evidence because they showed he was in jail and used profanity,[16] Giardina fails to establish that such a motion would have succeeded. *See, e.g., Faust v. State*, 95 So.3d 421, 426 (Fla. 4th DCA 2012) (finding that jail calls were admissible when they were relevant to show consciousness of guilt); *Hayward v.*

---

[16] *See A.K. v. State*, 898 So.2d 1112, 1116 (Fla. 4th DCA 2005) ("The State cannot introduce evidence attacking the character of the accused during its case in chief, since the accused must first put his good character in issue."); *Killian v. State*, 730 So.2d 360, 362 (Fla. 2d DCA 1999) ("Evidence of a person's character or a trait of character is generally inadmissible to prove action in conformity with it on a particular occasion.").

*State*, 24 So.3d 17, 38-39 (Fla. 2009) (jail calls were admissible, as conduct or speech of a defendant that evinces a consciousness of guilt is relevant, and this probative value outweighed even the extensive use of profanity in the calls). Giardina does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance claim. He is not entitled to relief on Ground Six or Ground Seven.

### B.    Ineffective Assistance of Appellate Counsel (Ground Three)

In Ground Three, Giardina alleges that appellate counsel was ineffective in not arguing that trial counsel was ineffective for failing to object to the recording as inaudible. Giardina fails to establish that his appellate counsel was ineffective. A claim of ineffective assistance of trial counsel is properly raised in a postconviction motion, not on direct appeal. *See Robards v. State*, 112 So.3d 1256, 1266 (Fla. 2013) (stating that because a Florida appellate court usually considers ineffective assistance of trial counsel claims after the trial court has ruled on a postconviction motion, "with only rare exception, ineffective assistance of [trial] counsel claims are not cognizable on direct appeal."); *Smith v. State*, 998 So.2d 516, 522 (Fla. 2008) ("[The Florida Supreme Court has] repeatedly stated [ineffective assistance of trial counsel] claims are not cognizable on direct appeal.").

Giardina's appellate counsel was not ineffective for failing to raise a non-cognizable claim. She reasonably could have concluded that the appellate court would not consider the claim's merits. *See, e.g., Francois v. Wainwright*, 741 F.2d 1275, 1286 (11th Cir. 1984) ("[A]ppellate counsel . . . need not raise issues that he reasonably concludes will not be considered on the merits by the appeals court. . . . Given th[e] state procedural bar, appellate counsel could reasonably have concluded that on appeal the

Florida Supreme Court would not review the . . . issue on the merits."); *see also Rutherford v. Moore*, 774 So.2d 637, 647-48 (Fla. 2000) ("The [Florida Supreme] Court has previously explained that appellate counsel does not render ineffective assistance by failing to raise a claim of ineffective trial counsel on direct appeal[.]"). The state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable factual determination. Giardina is not entitled to relief on Ground Three.

## V.   Conceding Guilt: Ineffective Assistance of Trial Counsel (Ground Ten)

Defense counsel stated during his closing argument (Doc. 11 Ex. 2 at 217):

> The State has presented at least a case that would meet the burden of proof. Mr. Giardina committed aggravated battery. Our defense is that it was in self-defense. And the question is, if you find - - or at least what you'll need to decide, if you find that he was reasonably justified in using force that he utilized, you must find in favor of the defendant and enter a not guilty verdict.

Giardina contends that trial counsel was ineffective for conceding his guilt to aggravated battery. He claims this concession prevented the jury from convicting him of a lesser-included offense. The state court denied Giardina's claim (Doc. 11 Ex. 21 at 5-6) (court's record citations omitted):

> [I]n ground (f), Defendant claims that counsel was ineffective for conceding that Defendant committed the charged offense of aggravated battery. Defendant argues that even though counsel attempted to seek justification through a claim of self-defense he precluded the jury's possible finding of guilt on a lesser included offense. This claim must also fail. As the State asserts, the Defendant voluntarily chose to testify. On direct examination counsel asked questions clearly intended to demonstrate to the jury that the 'knife' was more of a tool than a weapon. However, on cross examination the Defendant readily admitted that he knew the knife was a deadly weapon and that he knew it was a deadly weapon at the time he stabbed the victim. Thus, as argued by the State, at that point, the Defendant admitted to committing aggravated battery through the use of a deadly weapon. Accordingly, there would be no basis for a lesser offense and no basis for the jury to find Defendant guilty of anything except the charged offense of

aggravated battery. When counsel stated in closing argument that the evidence did show Defendant had committed aggravated battery it was only because Defendant had testified and admitted to aggravated battery. It was also because the State had used the Defendant's . . . admission during their own closing argument, noting several times that the Defendant admitted the knife he used to stab the victim was a deadly weapon. Therefore, the defense's only hope was to argue that Defendant acted in self-defense, which is exactly what counsel did.

Giardina does not show that the state court unreasonably denied his claim. The trial court instructed the jury (Doc. 11 Ex. 2 at 224):

To prove the crime of aggravated battery, the State must prove the following two elements beyond a reasonable doubt. The first element is the definition of battery.

Number one, Michael Giardina intentionally caused bodily harm to Christopher Carpentier.

Number two, Michael Giardina in committing the battery, (a), intentionally or knowingly caused great bodily harm to Christopher Carpentier, or, (b), used a deadly weapon.

A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.

The state court did not unreasonably conclude that Giardina admitted to the underlying criminal act through his testimony. Giardina stated that he stabbed the victim with a four-inch folding knife. (Doc. 11 Ex. 2 at 158, 160) Giardina also testified that while he did not "remember factually the stabbing incident," he knew at the time it was possible to have caused death or serious bodily injury by stabbing Carpentier. (Doc. 11 Ex. 2 at 164-65)

Accordingly, as the state court noted, counsel argued to the jury Giardina stabbed the victim in self-defense because Giardina believed that Carpentier was going to hit him with a wooden stick. (Doc. 11, Ex. 2 at 212, 215-18) *See Smith v. State*, 76 So.3d 379, 383 (Fla. 1st DCA 2011) ("Self-defense is 'an affirmative defense that has the effect of

legally excusing the defendant from an act that would otherwise be a criminal offense.'"

(quoting *Mosansky v. State*, 33 So.3d 756, 758 (Fla. 1st DCA 2010))); *see also State v. Cohen*, 568 So.2d 49, 51-52 (Fla. 1990) ("An 'affirmative defense' is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question.").

Under these circumstances, the state court reasonably concluded that counsel was not ineffective in conceding to the charged act in his closing argument. Giardina has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Ten.

## VI. Cumulative Error (Ground Eleven)

Giardina argues entitlement to relief based on the cumulative effect of trial counsel's alleged errors. The state court denied this claim. (Doc. 11 Ex 19 at 5) Because each of Giardina's ineffective assistance of trial counsel claims is without merit, he has not demonstrated cumulative error. *See, e.g., Morales v. Fla. Dep't of Corr.*, 710 F. App'x 362, 365 (11th Cir. 2017) (per curiam) (reviewing a cumulative error claim and stating that when all claims of error have been rejected, "[t]here are, therefore, no errors to accumulate."). The decision was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable factual determination. Giardina is not entitled to relief on Ground Eleven.

Accordingly, it is **ORDERED** that Giardina's petition (Doc. 1) is **DENIED**. Giardina's motion to hear and rule (Doc. 31) and motion a for writ of mandamus, construed as a motion to hear and rule (Doc. 32), are **DENIED as moot**. The **CLERK** is directed to enter judgment against Giardina and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

**IT IS FURTHER ORDERED** that Giardina is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Giardina must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Giardina is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Giardina must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 16th day of October, 2019.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE